James W. LEWIS, Appellant,

v.

UNITED STATES of America, Appellee.

James G. BURLEY, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 6212, 6243.

United States Court of Appeals Tenth Circuit.

March 5, 1960.

See also 173 F.Supp. 674.

Robert C. Rhone, Jr., Denver, Colo. (Andrews and Rhone, Denver, Colo., were with him on the brief), for appellants.

Jack K. Anderson, Asst. U. S. Atty. for Dist. of Colorado, Golden, Colo. (Donald G. Brotzman, U. S. Atty. for Dist. of Colorado, Boulder, Colo., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and WALLACE, District Judge.

LEWIS, Circuit Judge.

These cases, now consolidated, reach this court for the second time from the District of Colorado. Earlier convictions of defendants Burley and Lewis for trafficking in narcotics in violation of 21 U.S.C.A. § 174 were set aside because of fatally defective indictments. 263 F.2d 912; 263 F.2d 959. Defendants were re-indicted for the same offense and, after a joint jury trial with one Jones, who does not appeal, were again found to be guilty of the offense charged. Complaint is now made of procedural circumstances which preceded a ruling of the trial court allowing the Government, in effect, to meet the defense of entrapment before resting its main case and of an

earlier ruling which, it is argued, forced the trial before counsel had an opportunity to adequately prepare. Since emphasis is placed upon this second contention we give it first attention.

On April 24, 1959, counsel and court met for the purpose of setting the instant case for trial. Urging the press of other business and the difficulties of the case, counsel[1] indicated that they could not adequately prepare for trial during the term of court and requested that the matter go over until the fall. Particular difficulty was noted in holding consultation with the defendant Burley who was then incarcerated in the Colorado State Penitentiary at Canon City under sentence of the state court. Defense counsel's concern in this regard was met by the assurance given by the United States District Attorney that Burley would be brought to Denver one week before the trial. Trial was then set for June 8, 1959, a date agreeable to all.

On the morning of the trial date the court was informed that the U. S. Attorney had not kept his commitment and that Burley had not been brought to Denver until the evening of June 7. Counsel for Burley and Lewis moved to dismiss the indictments for "gross misconduct" of the U. S. Attorney but since no showing was made that the Government could be blamed for more than an oversight the motions were promptly and properly denied. Subsequent motions placed the trial court in what he termed "somewhat of a dilemma."

■ The defendant Jones demanded a speedy and immediate trial. Burley and Lewis sought a continuance and also moved for a severance, a motion which had earlier been considered and denied on the merits. The U. S. Attorney resisted the motions of present appellants and supported the resistance by pointing out that the procedural difficulties could have been avoided had defense counsel reminded him of his promise to produce Burley rather than sit by and let the oversight run its full course. The trial court, after careful analysis of the strictly legal rights of the defendants, the duty of the government to do nothing irresponsible in the more nebulous field of fair play, the rights of the public in the prosecution of crime, and the professional duty of counsel in all its aspects, directed that the trial proceed subject to certain qualifications. Defense counsel was granted an immediate opportunity to consult with Burley and indication was made that after a jury was chosen, the trial would be recessed until the next day if the defense so desired. Further assurance was made that a recess would be called at any time during the trial if defense counsel desired to consult with Burley or each other. We believe the action of the trial court reflected sound judicial judgment.

■ Extraneous events beyond the direct control of the court may sometimes be so burdened with prejudice that the harm done will not be cured or discovered by even the most careful judicial inquiry and consideration. Cf. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250. But such a situation is extreme and the general rule remains firm that the determination of the impact of such events as we here consider upon the administration of justice lies within the sound discretion of the trial court and will not be upset on appeal except for a clear abuse of discretion or a showing of actual prejudice through subsequent events. No such showing is made here for the record indicates that no request for an opportunity to consult was ever made by defendants during the course of the trial. No claim of specific prejudice is made by defendants and their position, worded bluntly, seems to be: The Government made a promise and didn't keep it and we are now entitled to some advantage from that occurrence. Such is not the law. The Government is required to prosecute upon the highest level of fair play, a duty the Courts are careful to enforce. Yet an oversight such as here protested cannot, ipso facto, be used as a technicality to frustrate the

---

1. Each defendant was represented by separate counsel at the trial.

administration of justice. The Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defence" but such guarantee does not impose upon the Government the absolute and affirmative duty of arranging convenient time and place for consultation. And where the Government voluntarily assumes such obligation and then breaches it the effect of such occurrence must be carefully weighed against other equally important factors in the particular case. This the trial court did.

Appellants also complain that the trial court required them to disclose their defense of entrapment before the Government rested its case. The record discloses that such contention is neither technically correct nor substantively meritorious. After the cross-examination of a witness anticipated by the Government to be its final witness, the prosecution indicated the view that the cross-examination had inserted the issue of entrapment. Offer was made of proof in rebuttal of the potential defense. The trial court stated that the evidence would not be admitted until and if the issue of entrapment was presented by defendants and if the issue was presented by motion for acquittal or by requested instruction after the Government rested then the prosecution would be allowed to reopen for the purpose of rebutting the issue. The court summarized his ruling thus:

> "With the express understanding as I have previously stated: First I would ask you Gentlemen, and not require you to answer the question, whether or not you want to interpose that defense. Any of you are not required to answer it. I am not directing that you answer it, but if I know positively that you are going to do it, I might as well let him put his case on now."

After consultation, counsel for appellants announced they would request an instruction on entrapment; counsel for Jones announced that he would not. Each counsel indicated that no evidence would be offered in behalf of any defendant. The court then received the rebuttal evidence of the Government, limited its consideration properly, and under instructions not now questioned submitted the cause to the jury.

From the posture of the instant case it seems perfectly apparent that no prejudice resulted to the appellants from the court's action. When the issue of entrapment became apparent the Government had a right to meet that issue and the order of proof lay within the discretion of the trial court. The procedure followed was both expedient and proper under the circumstances. And it is further apparent that appellants acquiesced in the court's action. Our approval, however, is limited to the procedural aspects of this particular case and does not reach the possible substantive inference that entrapment can be a recognizable issue in a case only where made so by affirmative claim by the accused. Although entrapment is commonly referred to as a defense, its philosophical background is such as to leave in doubt whether or not the issue extends beyond the realm of a personal defense. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859; Marshall v. United States, 10 Cir., 258 F.2d 94, reversed on other grounds, Marshall v. United States, supra.

Other contentions of appellants have no merit.

Affirmed.