**Levi SWINGLE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9249.**

United States Court of Appeals Tenth Circuit.

Feb. 9, 1968.

Rehearing Denied March 26, 1968.

Joe A. Moore, Memphis, Tenn., and Jack B. Sellers, Sapulpa, Okl., for appellant.

John W. Raley, Jr., Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., with him on the brief), for appellee.

Before WOODBURY,[*] LEWIS and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Following a grand jury indictment, the appellant, Levi Swingle, was tried and convicted of misapplying the funds of a national bank in violation of 18 U.S.C. § 656 and § 2. The jury convicted Swingle of 44 counts and acquitted him of the first nine counts. It is contended the following errors occurred during the trial:

(1) Multiple documents were admitted in evidence based upon their identification as bank records. Swingle contends the documents were not linked up with the charges made and, therefore, are irrelevant and immaterial.

(2) The character instruction given was improper.

(3) The court failed to instruct that mal-administration or the exercise of bad judgment does not constitute an offense under the provisions of 18 U.S.C. § 656.

(4) The court failed to instruct that the payment of overdrafts, without more, does not violate 18 U.S.C. § 656.

(5) Cross-examination was unduly restricted.

(6) The totality of the pre-trial procedure deprived Swingle of due process of law.

Swingle was the president of a national bank in Cushing, Oklahoma. George E. Reagin was a customer of the bank. Beginning on January 4, 1961, and continuing intermittently during the years until March 23, 1964, Swingle made credit available to Reagin and his enterprises by various bank transactions, including the honoring of checks presented for payment when the Reagin account with the bank was insufficient to satisfy the payment demands. In addition to the checks honored there were six credit transfer transactions designed to benefit Reagin and his enterprises.

Several defenses were presented on Swingle's behalf, including character and reputation evidence; however, the principle defense relied upon by Swingle was that "[t]he payment of the overdrafts, or the cashing of checks drawn by one who has no funds on deposit with the drawee bank, by an officer of a bank is not an offense under the federal statute if, in making such payments, the officer acts in good faith, believing the drawer will be able to repay the money when required. * * *" 10 Am.Jur.2d Banks § 228 (1963). The first nine counts of the indictment involved eight transactions occurring in 1962 which predate a series of conferences held November 24, 25 and 26, 1962, at which time Swingle should have learned the economic plight of Reagin and should have known Reagin would not be able to pay the money or credit advanced when required. The jury apparently recognized this for it convicted Swingle on all counts charging transactions after the date of the conferences, beginning with count ten which charged a transaction occurring on March 27, 1963, and acquitted the accused of the first nine counts.

The appellant's "scatter-gun attack" relating to the exhibits received in evidence has been recently discussed and disapproved. Wall v. United States, 384 F.2d 758 (10th Cir. 1967). As in that case, the record here indicates appellant was afforded adequate opportunity to object to the various exhibits on the grounds of materiality and relevancy.

[*] Senior Circuit Judge of the First Circuit, sitting by designation.

■ The character instruction given [1] would not be adopted by this court as a model instruction and is not recommended. This court has reevaluated the contents of the "standing alone" instruction heretofore approved and concluded that the giving of the instruction is not compelled in all cases in which evidence of good character is admitted. Oertle v. United States, 370 F.2d 719 (10th Cir. 1966). "It is important * * * that the appellants, for their defense, did not rely solely on good character evidence; such evidence was, in fact, only incidental to the prime defenses." Id. at 727. Here, Swingle's defense of good character was merely incidental to his prime defense of good faith. Although related, the distinctiveness of each defense is exemplified by the jury's finding that Swingle acted in good faith until he reached a point where, despite his good character, he acted in violation of the federal statute. Further, because good character was not Swingle's sole defense, the "standing alone" instruction is relegated to the status of the other instructions given; as such, error must be objected to in compliance with Fed.R.Crim. P. 30. Proper objection was not made by Swingle, and the instruction given was not fundamental error.

After the instructions had been given to the jury, the court asked both parties if they cared to make any further record with reference to the trial of the case. Both parties answered in the negative. Fed.R.Crim.P. 30 provides: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict * * *." See, Nutt v. United States, 335 F.2d 817 (10th Cir. 1964).

■ Considering the instructions in toto, together with the acquittal of the accused on counts one through nine, we believe the instructions fairly presented the appellant's defense theory and absent timely objection pursuant to Fed.R.Crim. P. 30, they will not be further considered.

■ The evidence shows there was more than the payment of overdrafts. In most instances, the checks paid were never recorded in the bank books by an appropriate debit entry. The insufficient funds checks were held and presented each day without posting. There is no evidence that deposits to cover the constantly recurring payments were required. The nature of the banking business in our society requires the officers to exercise the highest degree of honesty in their administration of bank funds. The transactions in this case constitute more than the payment of overdrafts and are evidence of misapplication of the funds of the bank.

[5] The court permitted evidence that other customers had overdrafts at various times to be offered in defense of the charges. None of the other customers' overdrafts reached the large amounts shown to have been accorded Reagin. Appellant contends cross-examination was unduly restricted because during cross-examination of the F.B.I. accountant who investigated this case, the following transpired:

"Q. Well, did you at any time of your investigation of this bank ever look at the insufficient funds checks or the record of the insufficient funds turn-back checks of other customers in this bank besides Mr. Reagin?

A. Yes, sir.

Q. And you knew, did you, Mr. Peery, that there were many customers who were being accommodated over long periods of time by these insufficient funds checks that were held as an accommodation?

---

1. "If you are satisfied from the evidence in this case that the defendant Levi Swingle was a man of good character and repute in the community in which he resided, you should give that fact due weight. Such evidence of good character and repute may alone create a reasonable doubt as to the guilt of the defendant, when such evidence overcomes in your mind, beyond a reasonable doubt, the other evidence in this case."

Mr. Raley: We will object to that, your Honor, being completely immaterial to any issue before this Court.

The Court: What difference does it make, Mr. Sellers, about the others? We are talking about this case here.

Mr. Sellers: Well, your Honor, it runs to the intent of Mr. Swingle. They have alleged a conspiracy, your Honor, with this particular customer.

The Court: They'd have to show that Mr. Swingle did or did not supervise the other accounts. I think the objection is sustained."

The witness was not asked the question suggested by the court, but cross-examination was continued on another matter. We do not think the cross-examination was unduly curtailed.

■■ As a final point, Swingle contends "the totality of the pre-trial procedure effectively deprived the defendant of due process of law." This "scatter-gun attack" does not identify a specific error under the Federal Rules of Criminal Procedure. Under the guise of proposing more liberal discovery in this case, appellant argues that the trial court erred in not granting a continuance of the trial of this cause for a period of time which he concludes would be required to inspect all the bank records. The court did grant a continuance for the purpose of additional discovery and its actions were justified. Bear v. United States, 384 F.2d 132 (10th Cir. 1967); Lewis v. United States, 277 F.2d 378 (10th Cir. 1960). The accused wanted to examine all of the bank books in private to determine whether or not they might constitute evidence with respect to the guilt or innocence of Swingle. The motion made purports to be under Fed.R.Crim.P. 16. It was not made within ten days after arraignment as is required under Rule 16(f) and there was no showing that the attorney for the government had these records in his possession, custody or control. A motion was also made under Rule 17.1 for a pretrial procedure. These motions are now being argued without any effort having been made to obtain a subpoena duces tecum directing the bank to disclose specific materials. Appellant, by his argument, makes it apparent that he seeks to accomplish what the Supreme Court of the United States in Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951) specifically said could not be done. In the Bowman case, a defendant sought by subpoena to obtain records which " 'are relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants * * * ' " The Supreme Court stated: "This is a catch-all provision, not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up. The clause is therefore invalid." Id. at 217, 71 S.Ct. at 677.

■ Swingle argues that he should have been afforded a preliminary hearing to require a full disclosure of the government's case; however, Fed.R. Crim.P. 5 specifically says, "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner * * *." Provision (c) of that rule provides for a preliminary examination. In the case at bar the appellant was arrested upon a grand jury indictment. No provision is found in the rules for a preliminary examination under this circumstance.

An additional attack is made upon indictment by a grand jury. Fed.R.Crim. P. 6 provides for indictment by grand jury.

The foregoing examples of appellant's totality argument of deficiencies in pre-trial procedure indicate the reasons for the court's dismissal of his argument as a "scatter-gun attack" not identifying the error within the rule.

Affirmed.